UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LEO KENNEDY,

        Petitioner,               CASE NO. 17-cv-12308

v.                                HONORABLE NANCY G. EDMUNDS

DeWAYNE BURTON,

        Respondent.

_____/

**OPINION AND ORDER
DENYING THE HABEAS CORPUS PETITION,
DENYING A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL _IN FORMA PAUPERIS_**

## I.    Introduction

Michigan prisoner Leo Kennedy ("Petitioner") has filed a _pro se_ petition for

the writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted of first-

degree, premeditated murder, Mich. Comp. Laws § 750.316(1)(a), and possession

of a firearm during the commission of a felony ("felony-firearm"), Mich. Comp.

Laws § 750.227b, following a jury trial in Wayne County Circuit Court. He is

serving a life sentence for the murder conviction. In his habeas petition, Petitioner

alleges as grounds for relief that: (1) the prosecution attempted to engage in improper

judge-shopping; (2) he was unlawfully detained for an inordinate period of time

following the initial dismissal of the charges against him; (3) his trial attorney failed

to make timely objections to hearsay and witnesses' out-of-court statements; and (4) his right of confrontation and right to due process of law were violated by the admission of his co-defendant's out-of-court statements to the police.  Having reviewed the record, the Court agrees with warden DeWayne Burton ("Respondent") that Petitioner's claims are procedurally defaulted, are not cognizable on habeas review, are meritless, or were reasonably adjudicated by the state courts. Accordingly, the Court is denying the petition and declining to issue a certificate of appealability.

## II.  Facts and Procedural History

### A. The Charges, Trial, and Sentence

The charges against Petitioner arose from the fatal shooting of reputed crack cocaine dealer Anthony ("Tone") Mercer outside the Club Escape in Detroit, Michigan on August 29, 1999.  Petitioner was arrested during a routine traffic stop about a year after the crime.  At his first preliminary examination on August 31, 2000, a state district court judge dismissed the murder and firearm charges without prejudice due to insufficient evidence.  *See* 8/31/00 Prelim. Examination Tr. at 82-83, ECF No. 10-2, PageID. 230-231.  The prosecutor then re-charged Petitioner with the same crimes.  Following a second preliminary examination before a different state district court judge, Petitioner was bound over to Wayne County Circuit Court for trial.  *See* 9/15/00 Prelim. Examination Tr., ECF No. 10-3.

Petitioner was tried jointly with co-defendant Darnell Parham, but before a separate jury.  The prosecutor's theory was that Petitioner shot Mercer at Parham's request because Mercer was a rival drug dealer.  The defense theory was that Petitioner was merely present when Parham shot Mercer and that the witnesses who implicated him in the crime were not credible.

There were two eyewitnesses to the crime.  Ronald Powell, who was 15 years old at the time of the incident, testified that he recognized Parham's car near the nightclub at three or four o'clock in the morning on August 29, 1999.  He saw Parham arguing with Mercer near the car and heard Parham say, "I'll kill you." Parham and Petitioner then walked closer to the nightclub door and Parham handed Petitioner a gun.  Powell heard four gunshots seconds later and thought that Petitioner fled the scene with Parham.  During cross-examination, Powell acknowledged inconsistencies between his trial testimony, preliminary examination testimony, and police statements as to his descriptions of the shooter and certain details of the shooting.

The other eyewitness, Dawon Grier, testified that he knew both defendants and that he saw Petitioner fire about five shots at Mercer.  Grier also stated that he had heard in the neighborhood that Parham gave Petitioner a mission to shoot Mercer.  Grier acknowledged that, at the preliminary examination, he testified that he heard gunshots and saw Petitioner running away, but did not say that he saw

3

Petitioner shoot Mercer.  Grier explained, however, that he had concerns about his and his family's safety at the time and that his family had relocated for their own safety.

Other witnesses also implicated Petitioner in the crime, but they were reluctant to do so at trial.  Michael Dixon, for example, denied making a statement to the police and testified that he could not remember details about the homicide. However, he admitted to telling the prosecutor that he was afraid to testify.  Dixon acknowledged that he had previously signed a police statement in which he said that he had known Petitioner since childhood, that he ran into Petitioner after the shooting, and that Petitioner had told him he killed Mercer.  Dixon also said that Parham asked him to lie and say that he, Dixon, was at the nightclub on the night of the shooting, but Parham was not there.  In his statement to the police, Dixon also said that Parham informed him that he had "told on" Petitioner and reported that Petitioner had come to his house and admitted shooting Mercer.  Dixon claimed that his police statements about Parham were true, but his statements about Petitioner were not true.  On cross-examination, Dixon was also impeached with his preliminary examination testimony in which he denied knowing Petitioner.  Dixon ultimately admitted that he knew both Petitioner and Parham, but was afraid to testify.

Parham's former girlfriend, Sennie Yeager, was a very reluctant and combative witness. She denied making statements to the police, in which she claimed that she was in Parham's car when the shooting occurred and that Parham had raped and threatened her following the incident. She also refused to answer questions, argued with counsel and the court, and was held in contempt. After being admonished by the court, she testified that Petitioner told her that he had shot Mercer and that Parham told her that Petitioner was the one who pulled the trigger.

Tederrian Jones, Parham's cousin, testified that he knew Petitioner and Mercer. He further explained that he had sold drugs for Mercer, but had a dispute with him. Jones testified that he and his cousin, Deandre Frazier, have "Forever Real" tattoos on their necks and that Petitioner may have the same tattoo. Jones also testified he had a cousin named Eugene Wilkins ("Gino") who lived on Crane Street. Jones denied knowing about Petitioner's involvement in the drug trade, denied knowing about Petitioner's gun, and denied making a statement to the police. When confronted with his police statement, he admitted signing it, but he claimed that he only did so because he was afraid and wanted to go home. Jones was impeached with his police statement in which he said that he had heard Petitioner shot Mercer and hid the gun at a house on Grace Street. In his statement, Jones also admitted that he took the gun from the house on Grace Street and gave it to his cousin Gino.

Deandre Frazier was Jones' and Parham's cousin.  He testified that he knew Petitioner and Mercer.  He explained that he and his cousins used to sell drugs for Mercer, but they had begun to do so on their own.  Frazier denied having problems with Mercer.  He also denied making statements to the police.  Frazier was impeached with his signed statement, which indicated that there was an ongoing dispute between his group and Mercer, that Mercer had previously shot at Parham's house, that Petitioner had admitted to shooting Mercer to end the dispute, and that the gun was hidden at the house on Grace Street after the shooting.  Frazier claimed that he did not provide the statement and only signed the documents so that he could go home.

The preliminary examination testimony of Derrick McCoy, an unavailable witness, was read into the record at trial.  McCoy testified that he overheard a conversation between Petitioner, Jones, and Frazier at the house on Grace Street after the shooting. According to McCoy, Petitioner commented on how Mercer looked when he was shot and how fast he crawled into the nightclub.  Petitioner then said that he should have given Mercer a head shot.  McCoy also testified that Petitioner was known to carry a black nine-millimeter handgun.

The forensic report revealed that Mercer died from four gunshot wounds, two in his right arm and two in his abdomen.  The bullets and bullet fragments were removed from the body and given to the police.

Detroit Police Officer Dana Russell testified that she arrested Eugene Wilkins at the Crane Street residence and that her partner recovered a Lorcin nine-millimeter gun at that address. The parties stipulated that a spent bullet and a bullet fragment recovered from Mercer's body came from the gun recovered at the Crane Street residence when Wilkins was arrested.

Detroit Police Officer Jeff Wawrzyniak testified that he came into contact with Petitioner during a traffic stop on August 8, 2000. While his partner was getting information from the driver of the vehicle, Wawrzyniak questioned Petitioner, who was the passenger in the vehicle. Petitioner gave two false names, punched Wawrzyniak, and fled. Other officers arrived on the scene to assist. Officer Ronald Thomas saw Petitioner running away and gave chase. He found Petitioner hiding under a porch and arrested him after a struggle.

Later, at the police station, Lieutenant John Morell advised Petitioner of his constitutional rights and took a statement from Petitioner. In his signed statement, Petitioner admitted riding with Parham to Club Escape on the night of the shooting, but he said that he only went with Parham to get drugs to sell in order to earn money. He told Lieutenant Morell that Parham and Mercer were feuding over drugs and that Parham shot Mercer outside the nightclub. Petitioner denied shooting Mercer.

Petitioner did not testify at trial or present any witnesses. His defense was that Parham shot Mercer and had the motive to do so. He argued through counsel

that the witnesses who implicated him in the crime were drug dealers who were not worthy of belief and that he was being blamed for the crime because he was the low man in the drug business.

On January 11, 2001, the jury found Petitioner guilty, as charged, of first-degree, premeditated murder and felony-firearm.  On January 24, 2001, the trial court sentenced Petitioner to two years in prison for the felony-firearm conviction and to life imprisonment without the possibility of parole for the murder conviction.

### B.  The Initial Appeal and Initial Habeas Petition

In a delayed application for leave to appeal, Petitioner argued that his trial attorney was ineffective because the attorney failed to: sufficiently confer with him; move to preclude evidence; request a hearing on the voluntariness of Petitioner's statement to the police; object to improper testimony; make an improper closing argument; and object to the prosecutor's use of impeachment testimony as substantive evidence of guilt.  The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented."  *People v. Kennedy*, No. 239127 (Mich. Ct. App. Apr. 5, 2002).

Petitioner raised a new claim in the Michigan Supreme Court: that he was denied his constitutional right to an appeal of right in the Michigan Court of Appeals. He also appears to have raised the same claims that he presented to the Michigan Court of Appeals.  On March 26, 2003, the Michigan Supreme Court denied leave

to appeal because it was not persuaded to review the questions presented to it.  *See People v. Kennedy,* 468 Mich. 872; 659 N.W.2d 231 (2003).

On March 25, 2004, Petitioner filed a habeas corpus petition in this Court.  He raised claims about his trial attorney, the prosecutor's conduct, the admission of prior "bad acts" testimony, and his right of confrontation.  The respondent in that case argued in an answer to the petition that Petitioner had not properly exhausted state-court remedies for all his claims. On December 14, 2004, the Court dismissed the unexhausted claims without prejudice, stayed the exhausted claims, and administratively closed the case to allow Petitioner to return to state court.  *See Kennedy v. Warren*, No. 04-cv-71116 (E.D. Mich. Dec. 14, 2004).

## C.   The Motion for Relief from Judgment, Subsequent Appeal, and Amended Habeas Petition

Petitioner subsequently filed a motion for relief from judgment in the state trial court.  He argued that trial counsel was ineffective for failing to object to inadmissible hearsay, that the prosecutor interjected issues broader than guilt or innocence during closing arguments, that the trial court erroneously admitted evidence of prior bad acts, and that the trial court violated his confrontation rights by admitting testimony regarding his co-defendant's out-of-court statements.  The trial court denied the motion after concluding that Petitioner's issues did not warrant a new trial.  *See People v. Kennedy*, No. 00-10568 (Wayne Cty. Cir. Ct. July 29, 2005).

Petitioner appealed the trial court's decision, but the Michigan Court of Appeals denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D).  *See People v. Kennedy*, No. 271235 (Mich. Ct. App. Dec. 27, 2006).  On June 26, 2007, the Michigan Supreme Court likewise denied leave to appeal.  *See People v. Kennedy*, 478 Mich. 926; 732 N.W.2d 909 (2007).

Petitioner then returned to this Court with an amended habeas corpus petition in which he raised the following claims:  (1) He was denied the effective assistance of counsel when trial counsel failed to object to inadmissible hearsay, failed to file a motion to suppress his police statement, and made an improper closing argument; (2) the prosecutor deprived him of a fair trial during closing arguments when she interjected issues broader than his guilt or innocence; (3) it was error to admit prior "bad acts" evidence against him; and (4) the admission of Dixon's testimony regarding co-defendant Parham's statement implicating Petitioner in the homicide violated his Sixth Amendment right of confrontation.

The Court found no merit in Petitioner's ineffective-assistance-of-counsel claim and determined that his remaining claims were procedurally defaulted and meritless.  *See Kennedy v. Warren*, No. 04-cv-71116, 2009 WL 1313327 (E.D. Mich. May 11, 2009).  Petitioner appealed the Court's decision to the United States Court of Appeals for the Sixth Circuit, which affirmed this Court's decision on May 3, 2011.  *See Kennedy v. Warren*, 428 F. App'x 517 (6th Cir. 2011).

10

### D.  The Motion to Reissue the Judgment and Subsequent Appeal

In 2013, Petitioner asked the state trial court to reissue its judgment so that the deadline for an appeal of right would be re-set and the Michigan Court of Appeals would have jurisdiction to hear his claims as a matter of right.  Former Wayne County Circuit Judge Linda V. Parker granted Petitioner's motion and appointed appellate counsel for Petitioner.  *See* Order, *People v. Kennedy*, No. 00-10568-01 (Wayne Cty. Cir. Ct. Mar. 10, 2014), attached as Appendix 1 to Petitioner's current habeas corpus petition.

Petitioner then raised four claims on appeal:  (1) he was deprived of due process when the prosecution filed a second warrant charging him with the same offenses, his case was assigned to a different judge, and the case was bound over for trial without any new evidence; (2) he was deprived of his right not to be subjected to unreasonable searches and seizures when he was restrained without a warrant and probable cause following his arrest; (3) he was denied effective assistance of counsel when counsel failed to object to inadmissible and prejudicial hearsay; and (4) he was denied his rights under the Confrontation Clause when he was denied the right to confront his accusers.   The Michigan Court of Appeals rejected these claims in a reasoned opinion and affirmed Petitioner's convictions.  *See People v. Kennedy*, No. 322873, 2015 WL la8278191 (Mich. Ct. App. Dec. 8, 2015).

Petitioner raised the same issues in a delayed application for leave to appeal in the Michigan Supreme Court, which denied leave to appeal because it was not persuaded to review the questions presented to it. *See People v. Kennedy*, 500 Mich. 853; 884 N.W.2d 287 (2016). Finally, on July 14, 2017, Petitioner filed his current habeas corpus petition in which he raises the same claims that he presented to the state courts in his last round of appeals.

## III.   Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a habeas petitioner is not entitled to relief on any claim adjudicated on the merits in state-court proceedings unless the adjudication (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," as determine by the United States Supreme Court, or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.' " *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). A state-court's factual determinations, moreover, are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. Analysis

### A. Judge-Shopping

Petitioner alleges first that the prosecution attempted to engage in judge-shopping after the dismissal of the charges against him during his first preliminary examination. Petitioner points out that he was recharged with the same crimes after the state district court judge dismissed the charges for lack of evidence. A second preliminary examination was then held before a different state district court judge who bound Petitioner over to Wayne County Circuit Court for trial. Petitioner asserts that there was no new, noncumulative evidence that was not available at the time of the first preliminary examination and, therefore, the prosecutor's conduct violated his constitutional right to due process.

#### 1. Procedural Default

The Michigan Court of Appeals concluded on review of Petitioner's claim "that there was no due process violation and that the unpreserved error in the

assignment of the case to a different judge at the second preliminary examination did not affect the outcome of the proceedings." *Kennedy*, 2015 WL 8278191, at \*1. Respondent maintains that Petitioner's claim is procedurally defaulted because the Michigan Court of Appeals determined that Petitioner had not preserved his claim for appellate review.

Pursuant to the doctrine of procedural default, "a federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). A federal court's determination of whether a habeas petitioner's claim is procedurally defaulted is a four-step inquiry:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural ground is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) (quoting *Stone v. Moore*, 644 F.3d 342, 346 (6th Cir. 2011) (quoting *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

These four factors are easily resolved here.  First, there is a relevant state procedural rule:  "A defendant may not on appeal raise errors or irregularities relating to the preliminary examination, unless the issue was timely raised prior to or at trial."  *People v. Sparks*, 53 Mich. Ct. App. 452, 454; 220 N.W.2d 153, 155 (1974).  Petitioner violated this rule by not objecting before or during trial to the alleged judge-shopping and to the fact that a different state district court judge presided over the second preliminary examination.

Second, the Michigan Court of Appeals enforced the rule by stating that the claim was unpreserved because Petitioner failed to raise it below.  The Court of Appeals correctly noted that Petitioner "did not object to the assignment of the case to a different judge at the second preliminary examination or request that the case be transferred back to the judge who presided over the first preliminary examination." *Kennedy*, 2015 WL 8278191, at *1.

Third, a state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim if it is both well-established and normally enforced.  *Taylor v. McKee*, 649 F.3d 446, 450-51 (6th Cir. 2011).  The state-court rule regarding challenges to irregularities at preliminary examinations is an adequate and independent state ground for denying review of a federal constitutional claim because it is both well-established and normally enforced.  *See Sparks*, 53 Mich. App. at 454; 220 N.W.2d at 155 (citing cases dating back to 1967).

Petitioner has not alleged "cause" for his procedural default and resulting prejudice.  As such, he has abandoned any argument regarding cause and prejudice. *Wheeler v. Simpson*, 852 F.3d 509, 515 (6th Cir. 2017).

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim if he can demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' "  *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented the Court with any new and credible evidence of actual innocence.  Therefore, a miscarriage of justice will not occur as a result of the Court's failure to address the substantive merits of Petitioner's judge-shopping claim.  His claim is procedurally defaulted.

### 2.  On the Merits

Petitioner's judge-shopping claim also lacks substantive merit because, as the Michigan Court of Appeals recognized,

> [a]dditional evidence was presented at the second preliminary examination. Dawon Grier, who did not testify at the first preliminary examination, testified at the second preliminary examination that he saw defendant shoot the victim, Anthony Mercer. The prosecutor presented Grier at the second preliminary examination after the witnesses at the first preliminary examination failed to testify in accordance with their earlier statements. There is no indication that the prosecutor was seeking to harass defendant by refiling the charges and holding the second preliminary examination.

*Kennedy*, 2015 WL 8278191 at *2.

There also was no evidence that the prosecutor engaged in judge-shopping to obtain a favorable ruling. In the state court's words,

> [a]n error did occur under MCR 6.110(F) because the second preliminary examination was held before a different judge. However, there is no basis to conclude that the prosecutor had any control or influence on the assignment of the case to a different judge, and defendant did not request a transfer of the case when the judge at the second preliminary examination noted that the case should have been assigned to the original judge. The prosecutor never argued for having the case remain before the second judge. On this record, there is no evidence that the prosecutor was engaged in judge-shopping. Rather, the charges were refiled and the second preliminary examination was held because the witnesses at the first preliminary examination failed to testify as expected.

*Id.* Finally, there was no prejudice to Petitioner in having a different judge preside over his second preliminary examination because he "does not contest that the testimony at the second preliminary examination provided probable cause to bind him over." *Id.*

The Michigan Court of Appeals reasonably concluded that Petitioner did not establish a due process violation.  Thus, Petitioner has no right to relief on his claim. The constitutional claim lacks merit in addition to being procedurally defaulted.

### B.  The Pretrial Detention

Petitioner alleges next that he was denied his Fourth Amendment right not to be subjected to unreasonable searches and seizures.  Petitioner asserts that he was detained for an inordinate amount of time without a warrant or probable cause after the charges against him were dismissed at the first preliminary examination. Respondent argues that this claim is procedurally defaulted and barred from substantive review under *Stone v. Powell*, 428 U.S. 465 (1976).

### 1.  The *Stone v. Powell* Doctrine

In *Stone v. Powell*, the Supreme Court held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Id*. at 494 (footnote omitted).  "[T]he Powell "opportunity for full and fair consideration" means an available avenue for the prisoner to present his claim to the state courts, not an inquiry into the adequacy of the procedure actually used to resolve that particular claim."  *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013).

"Michigan provide[s] an adequate avenue to raise a Fourth Amendment claim." *Hurick v. Woods*, 672 F. App'x 520, 535 (6th Cir. 2016). A defendant may file a motion to suppress evidence before or during trial, *People v. Ferguson*, 376 Mich. 90, 93-95; 135 N.W.2d 357, 358-59 (1965), and even on appeal. *See People v. Moore*, 391 Mich. 426, 431; 216 N.W.2d 770, 773 (1974) (stating that, "if it appears from the trial record that had a motion to suppress been made it should have been granted, an appellate court may properly grant relief even though the issue was raised for the first time on appeal").

Petitioner could have filed a motion to suppress evidence before or during trial. Because he had an opportunity to present his claim in state court and ultimately took advantage of the opportunity during his final round of appeals, this Court is precluded from granting him relief on his Fourth Amendment claim. *Good*, 729 F.3d at 640; *Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

## 2. Procedural Default

Petitioner's claim also is procedurally defaulted. The relevant state procedural rule requires a defendant to raise an issue in the trial court to preserve it for appellate review. *See People v. Heft*, 299 Mich. App. 69, 78–79; 829 N.W.2d 266, 272–73 (2012). Petitioner violated this rule by not raising his Fourth Amendment claim in the trial court. The Michigan Court of Appeals enforced the rule by reviewing Petitioner's claim for "plain error" and stating that the issue was

unpreserved because Petitioner failed to raise the issue below. *Kennedy*, 2015 WL 8278191, at *2. The rule that a defendant must raise an issue in the trial court to preserve it for appellate review is an adequate and independent state ground for denying review of a federal constitutional claim, because it is both well-established and normally enforced.

Furthermore, Petitioner has not alleged "cause" for his procedural default or resulting prejudice, and he has not demonstrated that a failure to consider his claim on the merits will result in a fundamental miscarriage of justice. Thus, all four procedural-default factors are satisfied, and Petitioner's claim is procedurally defaulted.

### 3. On the Merits

Petitioner's claim lacks substantive merit in addition to being procedurally defaulted and barred by the *Stone v. Powell* doctrine. The police had probable cause to detain Petitioner because on the same day as the first preliminary examination when the murder and firearm charges were dismissed without prejudice, Petitioner was charged with resisting and obstructing a police officer. *See id.* at *3.

In addition, under state law, the dismissal of the murder and felony-firearm charges without prejudice at the first preliminary examination did not prohibit the prosecution from re-arresting and recharging defendant for the same offenses. *People v. Miklovich,* 375 Mich. 536, 539; 134 N.W.2d 720 (1965). Petitioner was

re-charged with murder and felony-firearm, on September 3, 2000, just three days after the charges were dismissed without prejudice.  There was no inordinate delay between the dismissal of the charges and the issuance of the new warrant.  Further, the only p

Finally, even if Petitioner were illegally arrested and detained, "[t]here is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." *Frisbie v. Collins,* 342 U.S. 519, 522 (1952).  Thus, an "illegal arrest or detention does not void a subsequent conviction." *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975).

For all these reasons, Petitioner is not entitled to relief on his Fourth Amendment claim.

## C. Trial Counsel

The third habeas claim alleges ineffective assistance of trial counsel. Petitioner asserts that his trial attorney was ineffective for failing to object to the prosecutor's repeated attempts to elicit inadmissible and prejudicial hearsay.  The alleged hearsay consisted of:

> • Dawon Grier's testimony that he heard in the neighborhood that Parham gave Petitioner a mission to murder Mercer (1/9/01 Trial Tr. at 75-76, 85, ECF No. 10-5, PageID. 448- 449, 458);

> • Tederrian Jones' statement to investigators that a guy named Lou told him that Mercer had been shot, and the next day everybody in the "hood" was saying everybody saw Petitioner shoot Mercer (*id*. at 195; PageID. 568);

> • Michael Dixon's custodial statement that Petitioner told him he killed Mercer, that Parham asked Dixon to lie for him and say that he was not at the Club Escape on the night of the shooting, and that Parham told him Petitioner had admitted to shooting Mercer (*id*. at 105-108, PageID. 478-481); and

> • Sennie Yeager's testimony that Parham told her that Petitioner had pulled the trigger (*id*. at 175; PageID. 548).

The Michigan Court of Appeals rejected Petitioner's claim under the law-of-the-case doctrine because Petitioner raised a similar issue in his initial delayed application for leave to appeal.[1]   This Court also has addressed Petitioner's claim that trial counsel was ineffective for failing to object to inadmissible hearsay by Dawon Grier, Tederrian Jones, and Michael Dixon.  *See Kennedy*, 2009 WL 1313327, at *6-*7.  The law-of-the-case doctrine, however, "applies only to later decisions in the same case."  *Edmonds v. Smith*, 922 F.3d 737, 739 (6th Cir. 2019). Accordingly, the Court will proceed to address Petitioner's claim of ineffective assistance of counsel.

To prevail on his claim, Petitioner must show that his trial "counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The deficient-performance prong "requires showing that counsel made errors so serious that

---

[1] The Court of Appeals also stated in a footnote that, it had briefly reassessed Petitioner's claims regarding the testimony at issue and had determined that, even if review were applicable, the claims would not merit appellate relief.  *Kennedy*, 2015 WL 8278191, at *4 n.2.

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted). "The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

As noted above, Petitioner raised his claim about Dawon Grier's, Tederrian Jones', and Michael Dixon's alleged hearsay and custodial statements in his first habeas petition. The Court initially pointed out in its dispositive opinion that:

> [defense] counsel may have reasonably decided not to object to such matters because exposing inconsistencies in the witnesses' testimony (between their own police statements, preliminary examination testimony, and trial testimony as well as among the different witnesses) and emphasizing co-defendant Parham's motive to commit the shooting was part of his overall trial strategy of claiming that the witnesses were

not credible, that Parham shot Mercer, and that Parham was attempting to blame the shooting on Petitioner. The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer,* 286 F.3d 851, 859 (6th Cir. 2002) (an ineffective assistance of counsel claim "cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken").

*Kennedy*, 2009 WL 1313327, at *6.

Regarding Dawon Grier's testimony that he heard in the neighborhood that Parham had given Petitioner a mission to kill Mercer, the Court wrote that !

counsel may have reasonably decided not to object to this testimony because it was elicited by co-defendant's counsel who then got Grier to admit that he was not privy to a plan between Petitioner and co-defendant Parham to murder Mercer. *See* Trial Tr., Vol. II, pp. 84–85. Petitioner was also able to use such testimony to argue that Grier did not actually see the shooting and only assumed that Petitioner shot Mercer based upon what he heard in the neighborhood and/or the fact that he saw Petitioner running from the scene. Thus, while such testimony may have been hearsay under state law, counsel was not necessarily deficient for failing to object to it. Additionally, contrary to Petitioner's argument, such testimony did not violate his confrontation rights as it was non-testimonial.

*Id.* at *7. Continuing, the Court wrote:

even assuming that counsel erred in failing to object to this testimony on hearsay grounds, Petitioner cannot establish that he was prejudiced by counsel's conduct. The prosecution presented significant evidence that Petitioner committed the crime. Both Ronald Powell and Dawon Grier testified that they saw Petitioner shoot Mercer. Witnesses, including Sennie Yeager and Derrick McCoy, testified that Petitioner told them that he had shot Mercer. Petitioner also admitted to police that he was with Parham at the time of the shooting. Testimony regarding Petitioner's flight from the police (following a traffic stop) and the recovery of the murder weapon also implicated Petitioner in the crime. Given such evidence of Petitioner's guilt, there is no reasonable

24

probability that, but for counsel's alleged error, the result of the trial would have been different. Petitioner has thus failed to establish that trial counsel was ineffective under *Strickland.*

*Id.*

The Court also found no merit in Petitioner's assertions that trial counsel was ineffective for failing to object to the use of Dawon Grier's, Tederrian Jones', and Michael Dixon's statements to the police for impeachment purposes.  The Court stated:

> Counsel . . . may have reasonably determined that such an objection would have been futile.  Under Michigan law, evidence of a witness' prior inconsistent statement may be admitted to impeach the witness even though the statement tends directly to inculpate the defendant.  *See* Mich. R. Evid. 613; *Cathron v. Jones,* 190 F.Supp.2d 990, 999 (E.D. Mich. 2002) (citing *People v. Kilbourn,* 454 Mich. 677, 682, 563 N.W.2d 669 (1997)).  While impeachment may be disallowed when the substance of the statement used to impeach the credibility of the witness is relevant to the central issue of the case and there is no other testimony from the witness for which his credibility is relevant, *Kilbourn,* 454 Mich. at 683, 563 N.W.2d 669, both Grier and Jones provided testimony implicating Petitioner in the crime.  The prosecution's use of their police statements was thus proper under Michigan law.  Moreover, such use did not violate the Confrontation Clause because the police statements were admitted for impeachment purposes and not to prove the truth of the matters asserted.  *See Tennessee v. Street,* 471 U.S. 409, 414, 105 S. Ct. 2078, 85 L.Ed.2d 425 (1985); *see also Crawford v. Washington,* 541 U.S. 36, 59 n. 9, 124 S. Ct. 1354, 158 L.Ed.2d 177 (2004).  Defense counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen* [*v. Scroggy,* 99 F.3d 1302, 1328 (6th Cir. 1996)].

> Petitioner relatedly asserts that counsel was ineffective for failing to object to the prosecution's use of Michael Dixon's police statement for impeachment.  In particular, counsel objects to Dixon's statement that co-defendant Parham told him that Petitioner had come to Parham's

house and admitted killing Mercer.  Petitioner claims that Dixon's statement was inadmissible hearsay and violated his confrontation rights.  The use of Dixon's police statement, even for impeachment, may have been improper under Michigan law because Dixon did not provide direct testimony against Petitioner.  *See Kilbourn,* 454 Mich. at 683, 563 N.W.2d 669.  Counsel did not raise such an objection at trial.  Nonetheless, even if counsel erred in failing to object to the use of Dixon's police statement (on either hearsay or constitutional grounds), Petitioner has not shown that he was prejudiced by counsel's conduct.  The trial court only allowed the police statements to be used for impeachment purposes and instructed the jury about the proper consideration of the statements.  Jurors are presumed to follow the court's instructions.  *See United States v. Powell,* 469 U.S. 57, 66, 105 S. Ct. 471, 83 L.Ed.2d 461 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it.").  The prosecution did not rely upon Dixon's statement as substantive evidence of guilt.  Moreover, as previously discussed, the prosecution presented significant evidence that Petitioner committed the crime. There is no reasonable probability that, but for counsel's alleged error, the result of the trial would have been different.

*Id*. at *7-*8.  The Court concluded that "Petitioner had failed to establish that trial counsel was ineffective under *Strickland.*"  *Id*. at *8.

Although the Court did not address Sennie Yeager's hearsay testimony that Parham told her that Petitioner pulled the trigger, Yeager repeatedly testified that Petitioner himself told her that he shot Mercer.  *See* 1/9/01 Trial Tr. at 175, 177, 180-81, 185-186, PageID. 548, 550, 553-554, 558-559.  Furthermore, to his credit, defense counsel asked the trial court to strike Yeager's testimony because of the difficulty in getting a proper response from her.  *See id*. at 188, PageID. 561.

Defense counsel made other attempts to discredit witnesses.  He attempted to impeach Dawon Grier with his testimony at the preliminary examination that he did

not see the shooting and that he did not volunteer any information about the case until he (Grier) was arrested.  *Id*. at 77-82, PageID. 450-455.  Defense counsel attempted to impeach Michael Dixon with testimony at the preliminary examination where he said that he did not know Petitioner.  *Id*. at 114-115, PageID. 487-488.

The Sixth Circuit Court of Appeals, moreover, rejected Petitioner's claim of ineffective assistance of counsel when reviewing this Court's decision in Petitioner's prior habeas case.  The Court of Appeals stated that Petitioner forfeited his argument about Yeager's testimony because he did not raise the claim in the district court. *Kennedy*, 428 F. App'x at 520.

The Sixth Circuit rejected Petitioner's claim about Grier's testimony -- that he heard in the neighborhood that Parham gave Petitioner a mission to murder Mercer -- because Grier's testimony did not amount to hearsay.  The Sixth Circuit also stated that, even if Grier's testimony were hearsay, defense counsel reasonably preferred to allow the testimony into evidence rather than object to it, because it undermined Petitioner's purported motive for the murder.  *Id*. at 520-521.

The Sixth Circuit rejected Petitioner's claim about Dixon's police statement because defense counsel ultimately did object and the evidence was not admitted as substantive evidence.  The Sixth Circuit also stated that any misstep did not prejudice Petitioner, considering the other evidence against him.  *Id*. at 521.  Finally, the Sixth Circuit rejected the claim about Jones' statement to the police – that everybody in

the neighborhood was saying that everybody saw Petitioner shoot Mercer -- because any failure to object did not prejudice Petitioner.  *Id*. at 521-522.

For all the reasons given by the Sixth Circuit and this Court in Petitioner's previous habeas case, Petitioner has failed to show that defense counsel's performance was deficient and that the deficient performance prejudiced the defense.  Counsel arguably satisfied *Strickland's* deferential standard.  Accordingly, Petitioner is not entitled to relief on his claim.

### D.  Parham's Out-of-Court Statements

In his fourth and final claim, Petitioner alleges that his right of confrontation was violated by the admission of Parham's statements to Michael Dixon and Sennie Yeager.  The disputed evidence was:  (1) Dixon's statement to the police that, after the shooting, Parham told him that Petitioner had admitted to shooting Mercer (1/9/01 Trial Tr. at 108, ECF No. 10-5, PageID. 481); and (2) Yeager's testimony that Parham told her that Petitioner pulled the trigger (*id*. at 175, PageID. 548).

Petitioner raised a portion of this issue in his last round of appeals.  He claimed there that his right of confrontation was violated by Parham's statement to Dixon that Petitioner had admitted to shooting Mercer.  The Michigan Court of Appeals rejected Petitioner's claim, stating

> [e]ven assuming, without deciding, that an error occurred, it was harmless beyond a reasonable doubt.  "Harmless error analysis applies to claims concerning Confrontation Clause errors[.]"  *People v Shepherd*, Mich 343, 348; 697 NW2d 144 (2005).  A reviewing court

must thoroughly examine the record to determine whether it is clear beyond a reasonable doubt that the verdict would have been the same without the error. *Id*. There was significant evidence of defendant's guilt. Two eyewitnesses testified that they saw defendant shoot Mercer. Two other witnesses testified that they heard defendant make statements acknowledging that he shot Mercer. Defendant admitted to the police that he was at the murder scene with Parham when the shooting occurred. Defendant's flight from the police following a traffic stop suggested his consciousness of guilt. *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). We conclude that it is clear beyond a reasonable doubt that defendant would have been found guilty even if the statement at issue had not been used.

*Kennedy*, 2015 WL 8278191, at *4.

This Court reached a similar conclusion when it addressed the issue in Petitioner's first habeas case. *See Kennedy*, 2009 WL 1313327, at *15. The Court also found no merit in Petitioner's claim because Parham's statement to acquaintance Michael Dixon was not testimonial in nature and, therefore, the Confrontation Clause was not implicated. *Id*. at *14 (citing *Crawford v. Washington*, 541 U.S. 36, 51-52, 56 (2004)). The same thing is true of Parham's comments to Sennie Yeager, because she was an acquaintance as well.

Petitioner's claim lacks merit, and state court's finding that the alleged error was harmless was not objectively unreasonable. In fact, the Sixth Circuit Court of Appeals stated on review of Petitioner's claim that "a state court could reasonably reject any potential error in the admission of [the] evidence as harmless." *Kennedy*, 428 F. App'x at 523. Accordingly, Petitioner is not entitled to relief on his claim. *See O'Neal v. Balcarcel*, 933 F.3d 618, 624 (6th Cir. 2019) (explaining that "[s]tate

courts' harmless-error determinations are adjudications on the merits, and therefore federal courts may grant habeas relief only where those determinations are objectively unreasonable") (citing *Davis v. Ayala*, 135 S. Ct. 2187, 2198-99 (2015)).

## V.  Conclusion and Order

For the reasons given above, Petitioner's first and second claims are procedurally defaulted, not cognizable on habeas review, or meritless.  His third claim lacks substantive merit, and the state appellate court's rejection of his fourth claim as harmless error was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  The Court, therefore, denies the petition for writ of habeas corpus.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller–El v. Cockrell,* 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Petitioner has failed to make a substantial showing of the denial of a constitutional right. Further, reasonable jurists could not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that the issues deserve encouragement to proceed further. A certificate of appealability, therefore, is not warranted. Nevertheless, if Petitioner appeals this decision, he may proceed *in forma pauperis* on appeal because he was granted *in forma pauperis* status in this Court, and an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. 24(a)(3)(A).

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that leave to proceed *in forma pauperis* on appeal is **GRANTED**.

s/ Nancy G. Edmunds
NANCY G. EDMUNDS
Dated: June 8, 2020                UNITED STATES DISTRICT JUDGE